## EUGENIA TEILLARD

*v.*

## ENRIQUE GREEN ET AL.

---

San Juan, Equity, No. 916.

On Prescription as Affected by Military Orders.

Equity—Necessary Parties.
    1. In a bill to set aside fraudulent conveyances it is not necessary

Teillard v. Green.

to make persons in the chain of title parties, if their title is passed and become vested in the actual defendant. The fact that they are accused of fraud is immaterial if in any event they have no property interest in the result of the litigation.

Necessary Parties—Warranties.

2. Necessary parties are not those who have an interest in the subject-matter of the suit but those who have an interest in the object of the suit, and this does not apply to warrantors.

Necessary Parties—Expediente Posesorio.

3. A warranty is not implied if subject to the express terms of an expediente posesorio under the Porto Rican practice, for this expressly disclaims affecting the rights of third parties.

Equity—Pleas.

4. Pleas as well as demurrers have been abolished by equity rule No. 29; but if filed before these rules went into effect, a plea will be considered as a part defense.

Prescription—Not Insisted On.

5. The part of a plea not insisted on in argument cannot be considered.

Plea—Sufficiency.

6. A plea must be construed as admitting the allegations of the bill so far as it does not deny them.

Prescription—Military Order.

7. A military order which shortens the time of prescription in force is good in cases where there remains a reasonable opportunity for the real owner to contest the claims of the possessor.

Prescription—New Statute.

8. The law of Porto Rico amending the military orders keeps prior provisions as to prescription in force as to existing titles.

Prescription—Rule of Repose.

9. After thirty years' adverse possession a transaction cannot be inquired into in Porto Rico, but the shorter period of six years does not apply unless it be accompanied by good faith and a proper title. One knowing the fraud of his predecessor in the title is not acting in good faith.

Expediente Posesorio—Not Good Title.

10. An expediente posesorio under the Porto Rican law is in effect ex parte and does not pass the good title which is necessary under the statute of prescription.

Statute of Repose.
    11. The statute of repose applies to a title held under the expediente posesorio.

Res judicata—Stare Decisis.
    12. Where a defense of res judicata is modified into an appeal to stare decisis, the matter cannot be decided except in connection with the proofs.

Opinion filed October 31, 1913.

Mr. *Francis H. Dexter* for complainant.

Mr. *Martin Travieso, Jr.,* for defendants.

HAMILTON, Judge, delivered the following opinion:

This suit is brought by a citizen of France against residents of Porto Rico, and seeks to cancel as clouds on her title certain conveyances. The bill alleges that one Antonio Dukey died many years ago, leaving to his daughter Ursula a participation valued at $50,000 in the sugar cane hacienda known as "Santisima Trinidad," in the barrio of Marias, Añasco, the hacienda comprising 482.17 cuerdas, and containing a sugar mill. In 1856 the said Ursula died at Mayaguez, leaving a husband, Pablo Teillard, and three children, to wit, the complainant Eugenia and her brothers Armond and Arturo Teillard, to whom Ursula devised all her interest in the hacienda Santisima Trinidad. There being no profits from the estate, the widower, Pablo Teillard, received nothing, but as guardian remained in control of the property for his children. The said Ursula also inherited from her mother an additional partici-

pation in the said hacienda valued at $3,790.06. Proceedings in the court of first instance of Mayaguez in 1857 and 1867 vested the above property entirely in the complainant and her two brothers.

Soon after the death of his wife, Pablo Teillard took complainant to France, where they remained. Armond departed for South America, and nothing is now known of his whereabouts. Arturo, however, remained in Porto Rico, and looked after the family interests. Arturo sold his share in 1872, but there remained in complainant and Armond an undivided interest of 40.076 per cent. In 1875 Pablo gave Arturo power of attorney to administer, all properties which Pablo had in Porto Rico, without any mention of the property now in dispute.

The bill then goes on to allege that Arturo conceived the plan of defrauding his relatives out of their interest in the Santisima Trinidad, and in 1894 instituted what is called an "expediente posesorio" in the name of Pablo Teillard, which amounted to a declaration of adverse possession of 22.29 per cent of the property as belonging to Pablo Teillard. This proceeding, being *ex parte,* was carried through by affidavits, and complainant never had any information on the subject. The allegation made in the said petition by Arturo was that Pablo acquired the said interest of 22.29 per cent in the hacienda in "liquidation of the community property corresponding to the conjugal society composed of his wife Ursula and himself." This expediente posesorio by its terms was without prejudice to persons having better rights.

The bill goes on to say that Arturo, having thus placed the property in the name of Pablo, and holding power of attorney of Pablo, proceeded to sell the property to his father-in-law, Al-

fredo Cristy, in 1894, making the false recitals above mentioned. Arturo died in 1905, leaving a widow, Ciriaca, daughter of Alfredo Cristy. On July 28, 1908, Alfredo Cristy transferred his interest in the 22.29 per cent of the hacienda to Ciriaca for the alleged sum of $5,500, and she in her turn, on December 27, 1911, sold the property to the defendant, Enrique Green y Morales, who had actual knowledge of the title and rights of complainant and Armond. These deeds were properly inscribed, and the relief sought by the bill is their cancelation, and a direction to the registrar of property at Mayaguez to cancel the inscriptions.

The bill was filed October 14, 1912, and December 2, 1912, the defendants filed a demurrer setting up that Pablo Teillard, Alfredo Cristy, and Ciriaca Cristy were necessary parties to the proceeding, and on the same day they filed also a plea setting up various prescriptions, and in particular that the suit was barred by the military order of April 4, 1899. There was a third plea of *res judicata,* but this was abandoned upon the argument, and there was substituted for it an appeal to the judgment of the district court of Mayaguez affirmed by the supreme court of Porto Rico, June 21, 1912. 18 P. R. R. 546. There was also an answer filed in support of the plea, denying all knowledge and notice of the claim of complainant.

The cause was submitted upon the demurrer and the sufficiency of the plea. The new equity rules had somewhat changed the practice, but no point is made upon this.

1. The demurrer presents the point that Pablo Teillard, Alfredo Cristy, and Ciriaca Cristy are necessary parties to the bill. The grounds upon which they are deemed necessary are that, in the first place, they were parties to the alleged fraudu-

lent proceeding, each, according to the bill, having performed one of the acts making up the chain of fraud, and, in the second place, that the property was conveyed from the one to the other, and it is necessary to have the makers of the conveyances themselves in court before the court can cancel the conveyances. For both reasons it is contended that these parties are entitled to their day in court before a decree can be entered against them. On the other hand, it is set up that these parties have no interest in the property, inasmuch as all they had has passed to the defendants, and no relief is sought against the omitted parties.

Where one has parted with all the interest he had in the subject-matter, and is no longer interested in the result, he is not a necessary party unless relief is sought against him. 15 Enc. Pl. & Pr. 596; Kerr v. Watts, 6 Wheat. 559, 5 L. ed. 330. In the case at bar, if the relief prayed for is granted, the parties sought to be brought in will be in no material way affected. They have passed the interest on to one who is a party to the suit, and if the complaint succeeds, that same interest would by decree be passed on to the other party to the suit. In no event would any interest come back to Pablo Teillard, Alfredo Cristy, and Ciriaca Cristy. It is true that they would rest under the imputation of having committed a fraud, but a third party, like these defendants, has not the right to have persons brought in on the question of their fraud. If material, the defendants can use the evidence of these persons. The case is not presented of an application by these third parties themselves.

2. It is further urged that Pablo Teillard, Alfredo Cristy, and Ciriaca Cristy are necessary parties because they are liable upon their warranties, and therefore have a material interest

Teillard v. Green.

in the result. It might be that in a sense this would give them an interest in the subject-matter of the suit, but the rule is not that such persons are necessary parties. Necessary parties are those only who have an interest in the object of the suit. Story, Eq. Pl. § 72; Trecothick v. Austin, 4 Mason, 16, Fed. Cas. No. 14,164; Coffey v. Norwood, 81 Ala. 512, 8 So. 199; Van Keuren v. McLaughlin, 21 N. J. Eq. 163; Howth v. Owens, 29 Fed. 722. It is perfectly true that it is the aim of a court of equity to do complete justice by embracing the whole subject and deciding upon and settling the rights of all persons interested in the subject of the suit. The reason is that the decree should terminate, and not instigate, litigation, and should free the estate in question from every defect which might lessen its value. Caldwell v. Taggart, 4 Pet. 190, 202, 7 L. ed. 828, 832. In the case at bar, suits might grow out of the warranties of the persons not made parties, but *non constat* there will be ever any suits brought. At all events, they would be collateral to the issue at bar, and not necessarily involved in its results.

3. It may be added that it is not at all clear from the allegations of the bill that any warranty is involved. Warranties are not mentioned in the bill, and a fair construction of the bill, especially under the allegation that each one knew all of the alleged fraudulent transactions, is that each one only passed on what title he had. The demurrer, of course, admits the allegations of the bill. Whatever warranty was implied in the several deeds was subject to the express terms of the expediente posesorio, which did not affect in any way the claims of third parties. Mortgage Law of Porto Rico, §§ 391, 392; Civil Code, §§ 1364 & 1377.

Teillard v. Green.

It follows from the above considerations that the demurrer for lack of necessary parties must be overruled.

4. There is, however, a further defense in the shape of a plea. · Pleas, as well as demurrers, have been abolished by the new equity rule No. 29, but this paper was filed before the new rules went into effect. A plea formerly put the whole case upon a die of one defense. That one defense must be sufficient, or the whole case was lost. This was modified, and now has been abolished. The plea was formerly set down for argument upon its sufficiency, and now it will be considered under the new rules as a part defense, and is heard as if on motion under rule 29.

5. The plea is of prescription. There is first mentioned § 1268 of the Civil Code, then the limit of four years for the action of nullity, and then articles 36 and 37, subdivision 2, of the Mortgage Law. This last has not been insisted upon in argument, and so will not be considered.

6. In considering the sufficiency of a plea we have regard only to what it alleges, taken in connection with what it admits of the bill. In this case the plea and the answer filed in support thereof do not deny any of the allegations of the bill, except to say that Alfredo Cristy and Ciriaca Cristy had, at the time of acquiring their interest in the land, no knowledge or notice of the claims of the complainant, whether actual, constructive, or otherwise. The plea does not set out any of the elements required by the statute of prescription, and so as to this, except as aided by the answer, the plea must be construed as admitting the allegations of the bill. The answer is not a general answer, but is limited to supporting the plea. Such is the state of the pleadings under which we must now consider the defense of prescription.

Teillard v. Green.

7. The plea sets up that the claim of the complainant is barred by the prescription of six years declared in the military order of April 4, 1899. The prescription controlling such cases was governed by the Spanish law (Civil Code, art. 1957), which prevailed in Porto Rico at the time that Alfredo Cristy in 1894 became the alleged purchaser of the property. Article 1957 of the Spanish Code provided that "ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years in regard to those absent, with good faith and with a proper title." The complainant being absent from Porto Rico, her ownership would not have prescribed until after twenty years from the possession taken in 1894, unless there was some modification of the statute. It is alleged that this modification occurred in consequence of a military order promulgated by General Henry, April 4, 1899. This was issued when the American troops were in possession of Porto Rico, following its surrender by the Spaniards on July 25, 1898. What was called a "judicial order" was promulgated by General Henry, designed to make certain changes in the civil law, and the first section provided that "article 1957 of the Civil Code is amended to read as follows: Ownership and other property rights in real property shall prescribe by possession for six years as to persons present and absent, with good faith and with a proper title." The effect, therefore, of the change was to substitute a period of six years as to all persons, whether present or absent. This military order has been construed by the Supreme Court of the United States in Ochoa v. Hernandez y Morales, June 16, 1913, 230 U. S. 139, 57 L. ed. 1427, 33 Sup. Ct. Rep. 1033, affirming 5 Porto Rico Fed. Rep. 463, so far as

relates to another clause, which reduces from twenty to six
years the period during which possession must continue in
order to convert an entry of possession into a record of owner-
ship upon the public records. This decision declared void the
final clause of the order, which provided that "this order shall
have retroactive effect." The defendants concede that § 1 of
the order cannot be retroactive; that is to say, that the order
does not apply to the extent of making the entry of Alfredo
Cristy in 1894 prescribe in 1900; but they contend that it does
apply so as to cover the six years which ran after the making
of the order; that is to say, that prescription was complete in
1905. The question, therefore, is not as to the retroactive
element of the order, but whether the order under the principles
of the Ochoa Case has any effect at all. It is well settled that
the statute of limitations, which is in many respects analogous
to prescription under the Porto Rican law, may be modified
by shortening the time prescribed, provided this be done while
the time is still running and so that a reasonable time remains
for the commencement of an action before the bar takes effect.
Many cases holding this are cited in the Ochoa Case, which
goes on to say that General Henry should have, if properly
advised, confined the order to "cases where there still remained
a reasonable opportunity for the real owner to contest the pre-
tensions of the possessor. And in view of the instructions under
which he derived his authority, the judicial order must be con-
strued as if expressly thus limited." By inference, therefore,
if not directly, the judicial order of April 4, 1899, is held by
the Supreme Court to be a valid exercise of the military power
in cases where there still remained a reasonable opportunity
for the real owner, such as the complainant claims to be in this

case, to contest any adverse pretensions. Certainly the full running of six years would afford such a reasonable opportunity, and the new limitation of the military order, therefore, if it stood alone, would bar the complainant.

8. There can be no question that, in war, military law extends so far as there may be any necessity in the minds of the military authorities for its application. *Inter arma silent leges*. It is true that the custom has grown up, in modern times, of respecting local law and private property, and this is now recognized as international law, except so far as the contrary, of course, may be necessary. President McKinley, in his directions to the Secretary of War of July 13, 1899, expressly recognized this rule as to Cuba, and General Miles, on taking possession of Porto Rico, on July 28 of the same year, made a declaration or proclamation to the same effect. A protocol was signed between Spain and the United States on August 12, 1898, looking to peace, which, however, was not ratified until the treaty of Paris of April 11, 1899. 30 Stat. at L. 1754. Porto Rico and the adjacent islands were on October 1, 1899, established as a military department under Major General John R. Brooke, who assumed command October 18, and was succeeded by General Henry on December 8, 1898. The military government continued, and it was in this connection that the order of April 4, 1899, was published.

A civil government was established by what is called the Foraker act of April 11, 1900, and under it the present civil organization of Porto Rico came into being. Amongst other laws, the new legislature adopted in 1902 several of the codes now in force in the island. In this way the present Civil Code went into effect March 1, 1902, and § 1858 thereof provides:

"Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years in regard to those absent, with good faith and with a proper title." Thus, about three years after the military order had prescribed six years as a limitation, the local legislature in effect repeals that order, and restores the law as it was before the American occupation.

Complainant contends that, if the military order had any effect, there is no question that the local legislature had the right to extend the term, and in this case to restore the time as it was before. Certain it is that no one has a vested right in the statute of limitations. 19 Am. & Eng. Enc. Law, 168. What is the effect of this change?

Section 1840 of the Civil Code provides:

"Prescriptions which began to run before the publication of this Code shall be governed by the prior laws; but if, after this Code became operative, all the time required in the same for prescription has elapsed, it shall be effectual, even if according to said prior laws a longer period of time may be required."

This keeps the prior provision as to prescription in full force and effect. It is true that one of the temporary provisions at the end of the Civil Code, designed "to apply the corresponding legislation in cases not expressly defined in the Revised Code," provides the following rules shall be observed:

"Actions and rights born and not exercised before the Revised Code goes into operation shall continue with the duration and in the terms and the extent to which the preceding legislation may have recognized them, but are subject with reference to their exercise, duration, and proceedings to enforce them to the provisions of the Revised Code."

Teillard v. Green.

But this could hardly apply by its terms to the statute of prescription, and does not apply in the case at bar, because that is "expressly defined" by § 1840 of the Code. It follows, therefore, that a claim under the facts at bar prescribed in 1905, provided the other elements of the military order were fulfilled.

9. These elements are the provisions requiring the possession to be "with good faith and with a proper title." What at common law is called the rule of repose applies also under the civil law, and after thirty years' adverse possession, with or without good faith and title, a transaction cannot be inquired into. The shorter period, in this case six years, however, must be with good faith and with a proper title. Good faith is defined in § 1851 of the Civil Code as follows:

"Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same and could convey his title."

And a proper title by § 1853 as follows:

"By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question."

Do these apply to the case of Alfredo Cristy and his successors?

The bill alleges that Alfredo Cristy knew the fraud of Arturo, and in such case he could not be said to be acting in good faith, for he could not believe that the person from whom he received the land was the owner and could convey his title; but the answer which is filed in support of the plea expressly denies that Alfredo Cristy and Ciriaca Cristy had any knowledge or notice of the claims of the complainant in this suit. This, however,

does not come up to the requirements of § 1851 of the Civil
Code. It merely negatives knowledge, but does not allege belief
that the grantor was the owner and could convey the title. The
plea, having been set down on its sufficiency, must therefore be
overruled.

10. There is the further question whether there passed to
Alfredo Cristy the proper title required for prescription. The
complainant alleges that the expediente posesorio was, within
the knowledge of Alfredo Cristy and of the defendants, fraud-
ulent and on its face without prejudice to the claims of third
parties, to wit, the complainant, and that, therefore, a good title
did not pass. Such is the provision of the Mortgage Law of
Porto Rico, §§ 391, 392, and article 441 of the regulations for
its execution which accompany it. Section 392 provides:

"Should the notice drawn in accordance with the form pre-
scribed in the preceding article be sufficient, and there be no
opposition by a person having a right thereto, or such a position
as was made having been abandoned, the court shall approve the
proceedings, and order that the record requested be made in the
registry without prejudice to a third person having a better
claim."

These proceedings are in no respects a trial, and bind no one
except the party presenting the papers. They have been de-
clared in this court in effect *ex parte.* Pares v. Reynes, 2 Porto
Rico Fed. Rep. 403. They amount to much the same thing
as the declaration of adverse possession required to be filed in
many states of the American Union.

It cannot be said, therefore, that a proper title passed to
Alfredo Cristy under the expediente posesorio, because that
did not purport to pass any title at all. To this effect is the

decision of the Supreme Court of Spain, April 27, 1906, in 104 Jurisprudencia Civil, 210. The deed of Cristy to Ciriaca and hers to defendant Green, however, did pass a proper title. In other words, this part of the law of prescription relates merely to the form of the conveyance, not to its bona fides. The bona fides is covered by the other requirement, just discussed.

Of the three elements of time, good faith, and title, required by the military order, the time and title were such as to sustain the plea of the defendants, but the element of good faith was lacking, even under the allegations of the plea and answer. The objections to the plea, therefore, must be sustained.

11. Under the view taken of the case above, it is not necessary to consider the question of the application of the statute of repose of thirty years, which the complainant contends governs the case. This has been held to apply to the expediente posesorio by the decision of the Supreme Court of Spain, April 27, 1906, 104 Jurisprudencia Civil, 210.

12. It was originally contended by the defendants that this matter was *res judicata* on account of the decision of the supreme court of Porto Rico in the case of Teillard v. Teillard, 18 P. R. R. 546, but, as the parties were not identical, this claim has been modified to one of *stare decisis*. This is more an appeal to precedent than a defense to be set up by plea, and should be considered not now but in connection with the proofs in the case. It may be observed in passing that Teillard v. Teillard was decided prior to the decision of the United States Supreme Court in the Ochoa Case, and it must be observed also that the complainant in the Teillard Case did not allege bad faith in the defendants, which the present bill does allege. 18 P. R. R. 553.

Teillard v. Green.

An order will be entered overruling the demurrer, sustaining the objections to the plea, and allowing the defendants ten days for such further proceedings as he may be advised.